UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| EARNEST GRAWCOCK, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | CAUSE NO. 1:10-CV-345-RLM |
| | ) | |
| MARK HODGES, Whitley County | ) | |
| Sheriff, JANICE CALDWELL, and DR. | ) | |
| PAUL BLUSYS, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

<u>OPINION and ORDER</u>

This matter is before the court on two summary judgment motions, one filed by defendant Sheriff Mark Hodges and another filed by defendant Janice Caldwell. Plaintiff Earnest Grawcock opposes both motions.

Mr. Grawcock spent fourteen days in the Whitley County jail awaiting trial in 2008. He was taking several prescribed medications daily before going to jail, including OxyContin and Soma.[1] He was also using an asthma inhaler as needed. When the jail admitted Mr. Grawcock the jail nurse Janice Caldwell refused to allow Mr. Grawcock to take OxyContin and Soma, saying that the jail policy prohibited dispensing narcotics medication to inmates. She also refused Mr. Grawcock's asthma inhaler either because it contained an aerosol or because it lacked a proper prescription label. Mr. Grawcock claims that this

_____

[1] OxyContin is the trade name for the drug oxycodone and Soma is the trade name for the drug carisoprodol. Because the parties use the brand names, the court will as well.

denial of medical care amounted to a violation of his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to due process of law as a pre-trial detainee. Mr. Grawcock also claims that the Sheriff's policy caused the deprivation of his constitutional rights. He brought this action under 42 U.S.C. § 1983 against Sheriff Mark Hodges in his official capacity, Nurse Janice Caldwell in her individual capacity, and Dr. Paul Blusys in his individual capacity. Sheriff Hodges and Nurse Caldwell have separately moved for summary judgment. Dr. Blusys hasn't appeared or answered.

## I. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2011). A fact is "material" if it might affect the outcome of the litigation under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 245, 248 (1986). Conversely, if a fact wouldn't affect the outcome of a suit, whether it is disputed is irrelevant. Id. Disputes over material facts are "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Summary judgment is the time when a plaintiff must come

forward with enough evidence to show that he can convince a trier of fact of his version of the facts by a preponderance of the evidence. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 252; <u>Johnson v. Cambridge Industries, Inc.</u>, 325 F.3d 892, 901 (7th Cir. 2003) (describing summary judgment as the "put up or shut up" moment of a lawsuit).

While reviewing Sheriff Hodges' and Ms. Caldwell's summary judgment motions, the court doesn't weigh the evidence but rather accepts the admissible evidence Mr. Grawcock has presented and construes all facts and draws all reasonable inferences from those facts in favor of Mr. Grawcock, the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 255; *see also* <u>Gunville v. Walker</u>, 583 F.3d 979, 975 (7th Cir. 2009) ("Admissibility is the threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment.").


II. Jurisdiction

This action alleges violations of the constitution and was brought under federal statute 42 U.S.C. § 1983. The court has original jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." <u>Id.</u>).

III. Discussion

Janice Caldwell, the jail nurse who interacted with Mr. Grawcock, seeks summary judgment because, she says, Mr. Grawcock hasn't produced any evidence showing that she was deliberately indifferent to a serious medical condition from which Mr. Grawcock suffered. Ms. Caldwell argues that even if Mr. Grawcock could show that the care she provided was deficient, negligent, or even grossly negligent, none of those rise to the requisite standard of deliberate indifference.

Sheriff Hodges, who was the official in charge of the Whitley County jail at the time of Mr. Grawcock's incarceration there, seeks summary judgment, asserting that Mr. Grawcock hasn't shown that the jail had a policy or practice that denied medications to inmates. He maintains that any decision (whether based in policy or not) would have been made by an independent contractor who was charged with providing medical care to the jail. Further, he asserts that even if Mr. Grawcock could show a policy's existence, he can't show that denial of narcotic medications to inmates is a constitutional violation.


A. The Constitutionality of a Policy Banning Narcotic Medication

Sheriff Hodges and Ms. Caldwell filed separate motions for summary judgment asserting separate theories, but raising a common, threshold question. Both defendants say Mr. Grawcock hasn't sufficiently advanced the argument that a blanket policy against inmates receiving narcotic prescriptions

-4-

is unconstitutional. If a no-narcotics jail policy isn't unconstitutional, both defendants prevail even if Mr. Grawcock can show that Ms. Caldwell denied his medications without exercising good medical judgment or that Sheriff Hodges created the policy.

If such a policy isn't unconstitutional (as is pertinent to Sheriff Hodges) or if following such a policy doesn't deprive an inmate of his rights (as is pertinent to Ms. Caldwell), Mr. Grawcock's claim can't survive summary judgment and Sheriff Hodges and Ms. Caldwell are entitled to judgment. But if Mr. Grawcock can show that a blanket policy against narcotics *might* be unconstitutional under facts supported by this record, the matter survives summary judgment.

The court of appeals has spoken on this issue; inmate medical conditions sometimes warrant narcotic pain medications. <u>Walker v. Benjamin</u>, 293 F.3d 1030, 1039 (7th Cir. 2002) ("The fact that Nurse Dunbar and Dr. Benjamin may have based their refusal to treat Walker's pain on a good-faith belief that he was malingering, that he was not in pain but was merely trying to get high with the narcotic painkiller, is an issue for the jury."); <u>Ralston v. McGovern</u>, 167 F.3d at 1162 (finding that a prison guard's refusal of a cancer patient's prescribed pain medication was "gratuitous cruelty."); *see also* <u>Gonzales v. Feinderman</u>, 663 F.3d 311, 314 (7th Cir. 2011) (finding that an inmate's allegation that he wasn't receiving sufficient pain medication to deal with his hernia could survive dismissal).

That certain medical conditions sometimes warrant narcotic pain medication means that such medications are something more than just luxury. Strict adherence to a policy that bans narcotic medications raises a question of fact as to whether the denier was deliberately indifferent to a serious medical need and whether having a policy against narcotic medications violates constitutional rights. A jury might find that no constitutional right has been violated, but the court can't say that a no-narcotics policy never violates constitutional rights. Mr. Grawcock's case survives this threshold question and prompts the court to look at Ms. Caldwell's and Sheriff Hodges' individual arguments.

## B. Deliberate Indifference to the Need for Pain Medication

Mr. Grawcock alleges that Nurse Caldwell, acting under color of law, deprived him of either his Eighth Amendment right to be free of cruel and unusual punishment or his Fourteenth Amendment right to due process of law. *See* 42 U.S.C. § 1983. Mr. Grawcock was a pre-trial detainee, so his rights spring from the Fourteenth Amendment's due process clause, but the analysis of pre-trial detainee treatment under the Fourteenth Amendment is conducted using the Eighth Amendment's cruel and unusual punishment test. Jackson v. Illinois Medi-Car, Inc., 300 F.3d 760, 764 (7th Cir. 2002) ("On numerous occasions, we have stated that these due process rights are at least as great as the protections afforded a convicted prisoner under the Eighth Amendment.");

Henderson v. Sheahan, 196 F.3d 839, 844 n.2 (7th Cir. 1999) ("Whether Henderson's present injury claim is analyzed under the Eighth or Fourteenth Amendment ultimately makes no practical difference to our resolution of his challenge on appeal because we already have held that § 1983 claims brought under the Fourteenth Amendment are to be analyzed under the Eighth Amendment test."); Higgins v. Correctional Medical Services of Illinois, Inc., 178 F.3d 508, 511 (7th Cir. 1999) ("Higgins was a pretrial detainee and thus not protected by the Eighth Amendment; however, 'the due process rights of a pre-trial detainee are at least as great as the Eighth Amendment protection available to a convicted prisoner.'" (*quoting* Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 259 (7th Cir. 1996))). The court applies Fourteenth Amendment rights to Mr. Grawcock while quoting the Eighth Amendment and its standards since the Due Process Clause provides, at the least, as much protection as the Eighth Amendment. King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012) ("For convenience, we therefore refer to cases brought under either theory.").

To overcome Ms. Caldwell's motion for summary judgment, Mr. Grawcock must present evidence adequate to support two findings: first that he had a serious medical condition that required treatment (sometimes called the objective test); and, second, that Ms. Caldwell was deliberately indifferent to that medical condition (sometimes called the subjective test). King v. Kramer, 680 F.3d at 1018. Mr. Grawcock meets his burden of showing the first element; he has presented adequate evidence to support a finding that he had

a serious medical condition and there isn't much debate about this question. Mr. Grawcock testified that he had Chronic Obstructive Pulmonary Disease (COPD), depression, severe degenerative disk disease in several spinal disks, and a shoulder injury. Earnest Grawcock depo. at 22-24; *see also,* Sheriff Hodges' answers to interrogatory 2 (listing Mr. Grawcock's conditions as depression, high blood pressure, and degenerative disc disease – lumbar and cervical," but not necessarily conceding that these are serious health conditions); jail records, attached as Exhibit 6 to Doc. No. 69. An objectively serious medical condition either is one that is diagnosed by a physician and mandates treatment, or is one that is so obvious that a layperson would understand a doctor is needed. <u>King v. Kramer</u>, 680 F.3d at 1018 (*quoting* <u>Zentmyer v. Kendall County</u>, 220 F.3d 805, 810 (7th Cir. 2000). Mr. Grawcock presents evidence sufficient to support a finding on either test and neither Ms. Caldwell nor Sheriff Hodges presents evidence diminishing this conclusion. For the purpose of analyzing these motions, Mr. Grawcock has presented enough evidence that he has a serious medical condition.

Ms. Caldwell focuses her argument on the second (subjective) prong, saying that Mr. Grawcock hasn't provided sufficient evidence to show that she was deliberately indifferent to his medical condition and needs. *See* <u>Wynn v. Southward</u>, 251 F.3d 588, 593 (7th Cir. 2001) ("To state an Eighth Amendment claim, a prisoner must show that (1) he had a serious medical need, and (2) the defendants were deliberately indifferent to it."). Ms. Caldwell says she was

aware of each of Mr. Grawcock's medical conditions and, in lieu of the OxyContin and Soma, provided him with over-the-counter pain medication and another medication to help him with the abrupt withdrawal from the narcotic prescriptions. Ms. Caldwell claims this shows she wasn't indifferent to Mr. Grawcock's pain or discomfort, but dealt with it using non-narcotic pain relievers and a drug to lessen addiction withdrawal symptoms. Mr. Grawcock argues that Ms. Caldwell substituted over-the-counter pain relievers for the prescription narcotic based on a policy, not sound medical judgment, and this indicates (as Mr. Grawcock sees it) she was indifferent to his medical needs.

Finding deliberate indifference requires that Mr. Grawcock show that Ms. Caldwell was subjectively aware of his serious medical needs and that she disregarded an excessive risk posed by not treating him. Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Deliberate indifference is on the spectrum between, "the poles of negligence at one end and purpose or knowledge at the other." Farmer v. Brennan, 511 U.S. at 836. Recklessly disregarding a risk is the equivalent to deliberate indifference. Id.; *accord* King v. Kramer, 680 F.3d at 1018.

Ms. Caldwell asserts that even if a fact finder deemed her substitution of ibuprofen and Tylenol for OxyContin and Soma a poor medical decision, she wasn't deliberately indifferent to Mr. Grawcock's pain because she addressed it in some manner. Negligence in making a medical decision isn't deliberate indifference. Even gross negligence is below the necessary standard. <u>King v. Kramer</u>, 680 F.3d at 1018. Giving too mild of a pain reliever to a patient seems to fall squarely into the category of negligence or gross negligence and short of the reckless disregard for risk that Mr. Grawcock would need to show. *See* <u>Farmer v. Brennan</u>, 511 U.S. at 836.

Yet, there are two pieces of evidence that lean in Mr. Grawcock's favor and that he could present to a jury to support a finding that Ms. Caldwell acted with deliberate indifference. First, Mr. Grawcock can show (and there is no disagreement on this) that Ms. Caldwell made her decision to deny the narcotic pain medication based on a policy rather than on her medical assessment of whether he required it. This deflates Ms. Caldwell's argument that she couldn't have been deliberately indifferent because she provided some pain medication, even if not the proper kind. Instead, it tends to show that Ms. Caldwell didn't base the decision to give over-the-counter medication in lieu of OxyContin and Soma on a medical decision at all, but made the decision to adhere to a policy. Since the decision wasn't based on her (or a doctor's) assessment that Mr. Grawcock didn't medically require the prescription medication, a jury may find that the decision was deliberately indifferent to Mr. Grawcock's pain. <u>Arnett v.</u>

Webster, 658 F.3d 742, 754 (7th Cir. 2011) (finding that substituting pain medication for the inmate's prescribed anti-inflammatory medication that wasn't on the Bureau of Prisons' approved list may constitute deliberate indifference if the medical professional chose "an easier and less efficacious treatment without exercising professional judgment." Id. (*quoting* McGowan v. Hulick, 612 F.3d 636, 641 (7th Cir. 2010))). Based on the evidence Mr. Grawcock has provided, a jury could find that Ms. Caldwell made her decision without exercising professional judgment and therefore could be deliberately indifferent.

Second, Mr. Grawcock can show (without disagreement from Ms. Caldwell) that Ms. Caldwell knew that a physician who was caring for Mr. Grawcock prescribed the OxyContin and Soma and Ms. Caldwell made the decision (in accordance with the policy) to change his medications.[2] In Berry v. Peterman, 604 F.3d 435, 443 (7th Cir. 2010), the court of appeals considered a nurse's duty to follow a physician's orders. "Although a medical care system requires nurses to defer to treating physicians' instructions and orders in most situations, that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient." Id. Ms. Caldwell's claim doesn't rest on a contention that she overrode the prescribing

---

[2] Ms. Caldwell indicates that she faxed medical release forms to Mr. Grawcock's healthcare providers to get his records but didn't receive the records back until after Mr. Grawcock's release two weeks later. However, she does acknowledge that Vickie Grawcock brought prescriptions to her and she has never claimed that her reason for refusing the medications was that she doubted whether a physician legitimately prescribed them.

physician's order because she thought there was potential for harm to Mr. Grawcock.[3] In addition, there is no indication that the jail physician evaluated Mr. Grawcock's medical condition and changed his medication based on that evaluation.

In sum, Mr. Grawcock has presented evidence that, if believed by a jury, could show that Ms. Caldwell was deliberately indifferent to Mr. Grawcock's serious medical condition by ignoring the prescribing physician's orders while not having him reevaluated by the jail physician (if she suspected medication abuse). A prisoner asserting a Fourteenth Amendment claim needn't show that the medical staff actually ignored his serious medical condition. <u>Sherrod v. Lingle</u>, 223 F.3d 605, 611-612 (7th Cir. 2000). "If knowing that a patient faces a serious risk of appendicitis, the prison official gives the patient an aspirin and an enema and sends him back to his cell, a jury could find deliberate indifference although the prisoner was not 'simply ignored.'" <u>Id.</u> As Mr. Grawcock has presented the case to the court, Ms. Caldwell's potential deliberate indifference on this point stems not from her giving medication that was too weak to offset his pain, but from her indifference to the physician's orders. <u>Ralston v. McGovern</u>, 167 F.3d 1160, 1162 (7th Cir. 1999) ("Ralston was not seeking an expensive or unconventional treatment; he just wanted the

---

[3] Ms. Caldwell has raised the concern and shown some evidence that Mr. Grawcock's physician might have been reducing Mr. Grawcock's medication because his level of pain didn't match the dosage and possibly even that he was malingering. Still, Mr. Grawcock has pointed to evidence that Ms. Caldwell's stated reason for the refusal of the narcotic medication was adherence with the prison policy, not a medical judgment because of abuse of medication.

pain medicine that the prison doctor had prescribed for him. The prison guard's deliberate refusal of it was a gratuitous cruelty, and not a trivial one, even if the context of cancer is ignored."). This doesn't mean that Ms. Caldwell's decision to ignore the physician's prescription and supplant her own medical judgment is "gratuitous cruelty." Mr. Grawcock has presented evidence sufficient to support a finding that the decision to deny prescribed pain medication combined with the fact that Mr. Grawcock wasn't seen by the jail physician (whose judgment about pain medication after meeting Mr. Grawcock might have supplanted the prior physician's diagnosis where Ms. Caldwell's couldn't) may amount to deliberate indifference to Mr. Grawcock's serious medical condition. *See* <u>Estelle v. Gamble</u>, 429 U.S. 97, 104—105 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain," . . . this includes, . . . "intentionally interfering with the treatment once prescribed."); *see also* <u>Arnett v. Webster</u>, 658 F.3d 742, 754 (7th Cir. 2011) ("Allegations of refusal to provide an inmate with prescribed medication or to follow the advice of a specialist can also state an Eighth Amendment claim. . . . Although the defendants provided him pain medicine, a medical professional's actions may reflect deliberate indifference if he 'chooses an easier and less efficacious treatment without exercising professional judgment.'" (*quoting* <u>McGowan v. Hulick</u>, 612 F.3d 636, 641 (7th Cir. 2010)).); <u>Johnson v. Doughty</u>, 433 F.3d 1001, 1013 (7th Cir. 2006) (finding

that deliberate indifference includes medical personnel resorting to an easier course of treatment that they know is ineffective).

Because Mr. Grawcock can point to evidence that, if believed, a jury could use to find that he had a serious medical condition and that Ms. Caldwell was deliberately indifferent to that condition, Ms. Caldwell's motion for summary judgment regarding the administration of the OxyContin and Soma must be denied.


## B. ASTHMA INHALER

Mr. Grawcock also alleges that Ms. Caldwell refused his asthma inhaler because it lacked a properly affixed prescription label. Mr. Grawcock has asserted that his asthma was a serious medical condition. See Board v. Farnham, 394 F.3d 469, 484 (7th Cir. 2005) ("We have previously held that asthma can be, and frequently is, a serious medical condition, depending on the severity of the attacks."). Ms. Caldwell hasn't countered that argument. Nor has Ms. Caldwell provided any evidence that she wasn't deliberately indifferent to Mr. Grawcock's asthma (that is, she hasn't claimed that she wasn't subjectively aware of the asthma or that she provided alternative care and treatment that indicated she was addressing the condition, even if not to Mr. Grawcock's satisfaction). Instead, Ms. Caldwell bases her argument on two things: first, that Mr. Grawcock didn't specify the inhalers in his complaint, and second, that the inhalers that Mr. Grawcock's wife, Vickie, offered to Ms.

Caldwell in the jail lobby lacked proper labels with the prescription, so she couldn't accept them.

A complaint must contain enough factual information that, if believed, constitute a claim and put the defendant on notice of that claim. FED. R. CIV. P. 8(a). Mr. Grawcock's first amended complaint was specific about his degenerative disc disease and the denial of the pain medication. The complaint is more skeletal when it alleges that Mr. Grawcock's wife brought all his medication to the jail and Ms. Caldwell "sent most of the medication back with the Plaintiff's wife, and refused to provide Plaintiff with most of his prescribed medication, including the medication that would have controlled his pain." Doc. No. 7 at 2. That sentence makes clear that Ms. Caldwell sent Ms. Grawcock home with more than just the pain medication. True, it doesn't specifically say that Ms. Caldwell sent Ms. Grawcock away with the asthma inhaler, but it puts the reader on notice that Ms. Caldwell refused prescribed medications, including (but, by inference, not limited to) the pain medications.

Ms. Caldwell also presents evidence that she acted reasonably (and so without deliberate indifference) because the inhalers lacked verifiable prescriptions and Mr. Grawcock's medical records (which would have verified his asthma) weren't sent to the jail until after his release. Ms. Caldwell also acknowledged on intake that asthma was among Mr. Grawcock's health problems and she neither sped up the records release nor presented Mr. Grawcock's condition to the jail physician to get a new prescription and new,

properly labeled inhaler. A delay in treatment may amount to deliberate indifference. <u>Berry v. Peterman</u>, 604 F.3d 435, 442 (7th Cir. 2010) (finding that summary judgment was inappropriate where a doctor ordered over-the-counter pain medication for a few weeks while an inmate waited to be transferred to a facility that had a dentist); <u>Grieveson v. Anderson</u>, 538 F.3d 763, 779—780 (7th Cir. 2008) (finding that a jury could infer that delay of a day and a half in arranging for treatment of a broken nose was deliberate indifference); <u>Williams v. Liefer</u>, 491 F.3d 710, 716 (7th Cir. 2007) ("a jury could find that the defendants' delay caused Williams six extra hours of pain and dangerously elevated blood pressure for no good reason. Accordingly, we affirm the district court's denial of judgment as a matter of law."). The medical records that ostensibly would have confirmed that Mr. Grawcock's physician properly prescribed the inhaler arrived after his two-week stay in jail was over. A jury may infer deliberate indifference from this.

By referencing the refusal of medications other than his pain medication, Mr. Grawcock put Ms. Caldwell on sufficient notice of the nature of his complaint and his claim may proceed. Mr. Grawcock has presented evidence sufficient to allow a finding that he had asthma and that his asthma is a serious medical condition. He has also presented evidence sufficient to allow a finding that Ms. Caldwell was deliberately indifferent to his medical condition by disallowing the inhaler or finding a suitable alternative solution. Ms. Caldwell isn't entitled to summary judgment on the asthma inhaler question.

## C. Jail Policy

Mr. Grawcock seeks to hold Sheriff Hodges liable in his official capacity. To do so, he must show both that the denial of the medication was a denial of his constitutional rights *and* that the violation was a result of a policy or practice implemented by the Sheriff. Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694 (1978). That is, a bad act by an employee or agent of Sheriff Hodges isn't enough; to hold the Sheriff liable, the constitutional violation must be the direct result of the Sheriff's policy. Id. "The municipality's policy must be the source of the discrimination." McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir. 1995). In his summary judgment motion, Sheriff Hodges says Mr. Grawcock can't show that such a policy existed in the jail and that an express, written policy provides exactly the opposite.

Mr. Grawcock asserts that Nurse Caldwell was following a jail policy when she refused to give him his narcotic pain medication. Arguing against the existence of such a policy, Sheriff Hodges has submitted a copy of the written jail policy, which explicitly says that inmates should receive all their prescription medication. The written policy doesn't delineate between types of medication (such as controlled prescription narcotics) and delegates the task of administering the medication to the jail nurse. Sheriff Hodges says that this

document represents the complete policy of the jail on this matter and so no jail policy denies patients certain medications such as narcotics.

Mr. Grawcock points to evidence from which a jury could conclude that the Whitley County jail had a policy against administering narcotics to inmates. During his deposition, Mr. Grawcock testified:

> Q   You also indicated or they indicated on the medical screening form that you suffer from back problems, and those are the lumbar problems that we discussed.
> A   Correct.
> Q   The severe degenerative disk disease?
> A   Correct, and the neck fusion.
> Q   All right. And you were on the Soma for that and the OxyContin?
> A   Correct.
> Q   Were you allowed to have either of those at the jail?
> A   No, I wasn't.
> Q   And did Nurse Caldwell speak to you about that?
> A   Yes, she did.
> Q   What did she tell you?
> A   She told me it was their policy that there was no narcotics permitted in the jail facility.
> Q   And did she tell you whose policy it was?
> A   She didn't elaborate.

Earnest Grawcock depo. at 27—28. Mr. Grawcock came back to the subject later in the same deposition and said, "I was incarcerated in back. I'm not sure what transpired up front. I know she told me they did not allow narcotic medication in to the jail." Earnest Grawcock depo. at 56. Then, when asked, "Did Nurse Caldwell ever tell you it was the Sheriff's rule which prevented her from giving you all your medications?," Mr. Grawcock replied, "She told me it was policy that there was no narcotics allowed in the facility." Earnest Grawcock depo at 57.

Mr. Grawcock's wife, Vickie Grawcock also talked with Ms. Caldwell and testified about the contents. She said Ms. Caldwell refused Mr. Grawcock's OxyContin in the jail's lobby and took his Soma to determine whether it would be allowed. Shortly thereafter, Ms. Caldwell called Ms. Grawcock and told her to pick up the Soma.

> Q    And what did she tell you about why you needed to pick it up?
> A    The doctor would not allow him to have it in the jail.
> Q    Was it explained to you why neither the Soma nor the OxyContin was going to be allowed in the jail?
> A    She told me OxyContin would not be allowed because it was a narcotic, and I argued with her about the Soma. That's why she kept it. It's a muscle relaxer. There is no narcotic in it.

Vickie Grawcock depo, at 5—6.

Ms. Caldwell also indicated that there was a policy against administering narcotics in a request for admissions from co-defendant Sheriff Hodges:

> **REQUEST FOR ADMISSION NO.2:** The Whitley County Sheriff did not control your medical decisions in October 2008.
> **RESPONSE:** Unable to admit or deny. Janice Caldwell was aware of a policy against providing narcotic medications to prisoners but is unaware of who implemented this policy.
> **REQUEST FOR ADMISSION NO.3:** You had discretion as to how to treat inmates' medical issues in the Whitley County Jail in October 2008.
> **RESPONSE:** Admit that Janice Caldwell had discretion to provide limited treatment to inmates at Whitley County Jail, subject to consultation and approval of a physician and subject to policies of her employer and the Whitley County Jail.

Defendant Janice Caldwell's Responses to Codefendant's Requests for Admissions, at 1—2. Ms. Caldwell repeats this position in later questions.

To satisfy his burden under <u>Monell</u>, Mr. Grawcock must show that the jail policy is either an express policy or a widespread practice that is permanent and well-settled (or, not alleged here, an action by Sheriff Hodges himself as the final policymaker). <u>McTigue v. City of Chicago</u>, 60 F.3d at 382, *quoting* <u>Baxter by Baxter v. Vigo County School Corp.</u>, 26 F.3d 728, 735 (7th Cir. 1994). After providing the court with the written policy showing that inmates should receive all their medication, Sheriff Hodges claims there is no evidence pointing to the existence of a policy he created that prohibits narcotics distribution. Sheriff Hodges relies heavily on Ms. Caldwell's statements that she doesn't know who created or implemented the policy. This reliance sidesteps the court's ability and duty to draw reasonable inferences from the evidence in favor of Mr. Grawcock's position. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

Mr. Grawcock has provided evidence that would allow a jury to infer that Ms. Caldwell was acting according to policy when she refused his narcotic-based medication. He has provided his own deposition where he says that Ms. Caldwell told him that her refusal was a product of this policy. He has provided the deposition of his wife who says that Ms. Caldwell refused the OxyContin on the spot and refused the Soma after consulting with the doctor, both based on the policy against narcotics. Moreover, Mr. Grawcock has provided the

statements of Ms. Caldwell herself who says she was acting according to policy, even though she says she doesn't know whose policy it was.

In his interrogatory responses, Sheriff Hodges asserts that, "The Whitley County Sheriff was not responsible for creating policies for administering prescription pain medication to inmates. This decision would have been made by the physician and/or nurse on staff, who were independent contractors of the Whitley County Sheriff's Department." Hodges answers to plaintiff's interrogatories, at 3. Later Sheriff Hodges filed a copy of the "Whitley County Sheriff's Department, Jail Division, Operating Procedures," which explicitly provided that the jail officials shall administer medications in the dosage and frequency prescribed and not substitute medications. Doc. No. 71, Exh 1 at 3.

Sheriff Hodges's position conflates the <u>Monell</u> policy that there isn't *respondeat superior* liability (*see* <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. at 691) with the concept of delegation. That is, he asserts that he couldn't be liable if there was an unconstitutional policy because he delegated all medical matters to Health Professionals, LTD, who employed Ms. Caldwell. Any policy other than his written policy requiring distribution of all prescription medications must be one created by Ms. Caldwell or her company and so not a policy under which he could have <u>Monell</u> liability. Even though Sheriff Hodges can't be held liable for rogue behavior of an employee or agent (that is, the failure to follow his policy), delegating the

medical care doesn't absolve the Sheriff of any liability for unconstitutional

policies created by the delegate.

> The County cannot shield itself from § 1983 liability by contracting out its duty to provide medical services. (Indeed, the Court's recent decision in <u>Filarsky v. Delia</u>, 132 S.Ct. 1657, to the effect that private contractors are entitled to assert qualified immunity, suggests by parity of reasoning that they are state actors for other purposes as well.) The underlying rationale is not based on *respondent superior*, but rather on the fact that the private company's policy becomes that of the County if the County delegates final decision-making authority to it.

<u>King v. Kramer</u>, 680 F.3d 1013, 1020 (7th Cir. 2012).

If the Sheriff leaves another entity in charge of making medical policy,

and that policy is ultimately unconstitutional, then the independent contractor

status of the policymaker is irrelevant.

> We have previously said that a municipality would violate the Eighth Amendment under <u>Monell</u> if it had a policy requiring jail staff to throw away all prescription medications without implementing an appropriate mechanism for providing alternative treatment. This case eerily tracks that hypothetical example: HPL [the private contractor hired by the county][4] routinely switched patients off prescribed medications without appropriate oversight by a physician.

<u>Id.</u> at 1021 (*citation omitted*).

If Sheriff Hodges created a policy that mandated the distribution of all

prescribed medication to inmates and someone lower in the chain of command

(such as the prison doctor) disobeyed that and created his own policy that

certain drugs (for example, narcotics) aren't to be distributed, Sheriff can't have

_____

[4] Coincidentally, Health Professionals, LTD (HPL) is also the contractor employing Nurse Janice Caldwell and providing medical services to the Whitley County Jail.

Monell liability for creating an unconstitutional policy. *See* Monell v. Department of Social Services of City of New York, 436 U.S. at 692 (noting that the language of § 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor."). A random disobedience of a policy that causes a constitutional violation doesn't rise to the Monell level. When a widespread custom or practice that creates a constitutional violation, there needn't be an express policy. Thomas v. Cook County Sheriff's Dept., 604 F.3d 293, 303 (7th Cir. 2010); Calhoun v. Ramsey, 408 F.3d 375, 380 (7th Cir. 2005) ("[W]e think that it is more confusing than useful to distinguish between claims about express policies that fail to address certain issues, and claims about widespread practices that are not tethered to a particular written policy.").

Mr. Grawcock has pointed to enough evidence to allow a jury to find by a preponderance of the evidence that there was a policy in place in the jail that denied him his narcotic prescriptions. He also has shown that he filed a grievance about not receiving his medication. *See* Caldwell Interrogatory 5 ("I recall that Mr. Grawcock filed a grievance claiming another inmate was receiving narcotic medication while he was not."); *see also* Grawcock written grievance, Exh B to Caldwell designation of evidence. Finally, Mr. Grawcock has shown that Sheriff Hodges may have knowingly delegated more than just the nuances. *See* Hodges answers to interrogatories No. 1: "Whitley County Sheriff mark Hodges and his staff were not responsible for creating policies for

administering prescription pain medication to inmates. The decision would have been made by the physician and/or nurse on staff." *See* <u>King v. Kramer</u>, 680 F.3d at 1020 (finding that delegating policy-making authority to a medical contractor doesn't absolve the county of <u>Monell</u> liability when that contractor creates an unconstitutional policy).

A jury could find that Sheriff Hodges either had an express policy that prevented narcotic prescriptions, or (more likely, according to the Sheriff himself), delegated medical policymaking to a subcontractor. A jury could find that this policy was the cause of the constitutional violation he alleges. Sheriff Hodges isn't entitled to summary judgment.


IV. Conclusion

Because Mr. Grawcock has come forth with evidence, that if believed by a jury is sufficient to show that his Fourteenth Amendment rights were violated, the court DENIES the two motions for summary judgment (Docs No. 65 & 72).

SO ORDERED.

ENTERED: <u>August 6, 2012</u>


_____/s/ Robert L. Miller, Jr._____
Judge
United States District Court